STATE OF NEW JERSEY, IN THE INTEREST OF T. E. T., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 6, 1981—Decided April 27, 1982.

Before Judges BOTTER, ANTELL and FURMAN.

*Stanley C. Van Ness,* Public Defender, attorney for appellant (*Philip Ross,* designated counsel, of counsel and on the brief).

*James R. Zazzali,* Attorney General of New Jersey, attorney for respondent State of New Jersey (*Debra L. Stone,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

BOTTER, P. J. A. D.

Appellant T. E. T. was charged with juvenile delinquency for unlawful possession of (1) "a rifle (CO–2 BB) without having obtained a firearms purchaser identification card," and (2) "two 8″ steak knives under circumstances not manifestly appropriate for [their] lawful use," contrary to *N.J.S.A.* 2C:39–5(c) and *N.J.S.A.* 2C:39–5(d), respectively. His juvenile companion, J. B., was also charged with delinquency on the same grounds. At the hearing the charge of possession of a rifle was dismissed for reasons that we are not called upon to review.[1] However, appellant was adjudicated delinquent for unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(d), namely, the steak knives. *N.J.S.A.* 2C:39–1(r) defines a weapon to include specific types of knives, such as gravity and switchblade knives, as well as "other dangerous knives."

*N.J.S.A.* 2C:39–5(d) makes it a fourth degree crime to knowingly possess "any other weapon [a weapon other than a machine gun, handgun, rifle or shotgun]̇ under circumstances not manifestly appropriate for such lawful uses as it may have...." On this appeal T. E. T. contends that the statute is void for

---

[1] The judge found that, lacking proof of a "rifled bore," the BB gun was not a rifle within the meaning of *N.J.S.A.* 2C:39–1(m) but was a firearm as defined in *N.J.S.A.* 2C:39–1(f). Therefore, he concluded that its possession was interdicted by *N.J.S.A.* 2C:39–5(d), which applies to weapons other than machine guns, handguns, rifles and shotguns. The judge held that *N.J.S.A.* 2C:39–5(c) could be violated whether or not the rifle or shotgun is operable, but that *N.J.S.A.* 2C:39–5(d), read in conjunction with *N.J.S.A.* 2C:39–1(f), requires proof of operability which was lacking.

vagueness, that it fails to give "fair notice" to potential violators, and that it does not guard against arbitrary and discriminatory enforcement. Appellant also contends that the proofs fail to establish that T. E. T. knowingly possessed the steak knives under circumstances not manifestly appropriate for their lawful uses. We reject these contentions for the reasons which follow.

On August 27, 1980, at about 3 a. m., a police officer, whose vehicle was parked on the premises of an automobile dealer at the intersection of Westfield Avenue and Chestnut Street in Roselle Park, observed a red Volkswagon with a large CB antenna pass through the intersection traveling towards Cranford. A few minutes later the Volkswagon reappeared, again coming south on Chestnut Street and turning right onto Westfield Avenue. The officer followed the vehicle. It turned at Locust Street, headed north and then turned easterly on Grant Avenue. It went to Walnut Street and turned south again, but it stopped in the middle of the second block, south of Charles Street. The officer observed the driver of the car, later identified as J. B., exit the vehicle and go to the center of the vehicle's rear. The Volkswagon started up again, returned to Westfield Avenue, and then turned right or north on Chestnut Street. It then stopped and the driver walked to the rear of the vehicle and looked at something. At that point the officer noticed that the rear license plate was covered with something that was later identified as a paper towel or napkin. The driver looked back in an easterly direction on Westfield Avenue. He apparently observed the police officer, got back into the car and drove off at a high speed.

With his lights on the officer pursued the Volkswagon and signaled it to stop. He radioed headquarters for help and approached the vehicle. Behind the driver's seat he noticed a rifle standing upright; it turned out to be a BB gun. He ordered the occupants of the vehicle, appellant and J. B., not to move, and when help arrived he ordered them out of the vehicle.

Using a flashlight he observed two steak knives inserted in the seat belt holder between the two front bucket seats, with their wooden handles protruding upwards. The knives were about eight inches long.

Appellant and his companion both testified. They said they had left work at 2:00 or 2:30 a. m. and were going home to Linden, New Jersey. J. B. explained that he had the steak knives in the car to use them for "splicing wires" if necessary. He had last used them about two months before when he installed speakers in the car. He did not explain why he needed two knives for the purpose, and admitted that he kept other tools, such as ratchet sets, a hammer and screwdrivers, in the car's trunk. The BB gun was in the car, he said, because he had taken it to be repaired since the cartridge did not work properly. He admitted also that he passed "Sullivan's Chevrolet" twice that night, although it was not necessary to do so in order to get home. He maintained, however, that he was going directly home "except for the two times around the block." He also admitted that he covered the license plate with paper, but he said it was "unintentional," that he was merely trying to "stop a rattle" caused by a missing screw. It was stipulated that J. B.'s mother would testify to his use of the knives in the home to splice wires on occasion and that she gave him permission to use the knives.

At trial both defense counsel argued that the State failed to prove that the knives were possessed for an unlawful purpose. In adjudicating T. E. T. (and J. B.) delinquent, the trial judge found that T. E. T. knowingly possessed the knives jointly with J. B., and he found beyond a reasonable doubt that the knives were possessed "under circumstances not manifestly appropriate for such lawful uses" as they might have. He noted that no reasonable explanation was offered for driving past "Sullivan's Chevrolet" on at least two occasions that night, nor for departing from the scene at a high rate of speed after becoming aware

of the officer's presence. While J. B. may have used the knives to splice wires on previous occasions, the trial judge noted that they were not kept with the other tools in the car, leading to the conclusion that they were not possessed at the time in question for an appropriate lawful use.

Interpreting the congruent pre-Code offense under *N.J.S.A.* 2A:151–41(c), the Supreme Court held in *State v. Green*, 62 *N.J.* 547, 560 (1973), "that a knife which is not dangerous *per se* will be a 'dangerous knife' if the purpose of possession is its use as a weapon." In footnote 2, 62 *N.J.* at 556, the court looked at the *proposed* penal code provision in § 2C:39–3(i), which defined the offense of possessing a dangerous knife so as to require proof of "a purpose to use the same unlawfully against another." The commentary in volume II of the Final Report of the New Jersey Criminal Law Revision Commission, § 2C:39–3(9) at 309 (1971), described the proposal as a change in existing law by requiring proof of purpose in possessing knives which are not in themselves indicative of criminal purpose. *But cf. State v. Ebron*, 122 *N.J.Super.* 552, 557 (App.Div.), certif. den. 63 *N.J.* 250 (1973).

**▪** *N.J.S.A.* 2C:39–5 makes it a crime to possess weapons. Apart from machine guns, handguns, rifles and shotguns, whose possession without a license, permit or identification card is proscribed by subsections a, b and c, subsection d applies to general weapons. *N.J.S.A.* 2C:39–1(r) defines a weapon as "anything readily capable of lethal use or of inflicting serious bodily injury." Since many physical objects designed for lawful functions may be used as a weapon, *N.J.S.A.* 2C:39–5(d) proscribes the possession of any such object as a "weapon" when evidenced by circumstances not appropriate for its lawful use. Thus, to convict for possession of an object which has a normal lawful use, the State must show that the object was possessed for use as a weapon, rebutting the innocent inference suggested by the fact that the object is designed for a lawful use by proof

of circumstances suggesting a purpose inconsistent with such lawful use.

We find little difference between the standard of criminality established by *State v. Green, supra,* and *State v. Best,* 70 *N.J.* 56, 63–64 (1976), which followed the rule established in *State v. Green,* and the standard under the Code with respect to the use of knives as weapons. The Code's definition of the crime is more precise than that contained in *N.J.S.A.* 2A:151–41(c). The imprecise articulation in the former statute was upheld against a contention that the statute was unduly vague, *State v. Ebron, supra,* 122 *N.J.Super.* at 556–557, based upon a requirement of proof—possession for an unlawful purpose—engrafted upon the statute by court interpretation. *Id.* at 557. Possession for an unlawful purpose—"possession [of] any other weapon ... not ... for such lawful uses as it may have"—is a sufficient standard for defining criminal conduct. *See State v. Zito,* 54 *N.J.* 206, 215 (1969), where the court said, "Nor do we find obscurity in the words 'unlawful purpose.' An 'unlawful purpose,' as the sense of the situation suggests, is a purpose to do an act which the Legislature has forbidden upon pain of conviction for crime or petty offense." Thus, we reject the contention that the present statute is unduly vague.

We also reject the contention that the proofs were insufficient to adjudicate T. E. T. delinquent on the charge of unlawful possession of a weapon. Appellant contends that proofs were lacking that would permit an inference of intent to possess the knives for a purpose not appropriate for their normal (lawful) use. The trial judge rejected this contention. *See State v. Brown,* 80 *N.J.* 587, 591 (1979). We find sufficient credible evidence to support the trial judge's conclusion. *State v. Johnson,* 42 *N.J.* 146, 162 (1964); *see State v. Brown, supra.*

Affirmed.