198 N.J. Super. 553 (1985)
487 A.2d 1278
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN T. JONES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1985.
Decided January 29, 1985.
*555 Before Judges MICHELS, PETRELLA and BAIME.
*556 Joseph A. Fusco, Atlantic County Prosecutor, attorney for appellant (Steven M. Janosko, on the brief).
No brief was filed on behalf of respondent by the Public Defender.
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents difficult questions pertaining to the constitutional validity of N.J.S.A. 2C:39-7.[1] That statute prohibits any person previously convicted of certain designated offenses from possessing a weapon. The term "weapon" is defined in N.J.S.A. 2C:39-1r as including "anything readily capable of lethal use or of inflicting serious bodily injury."[2] *557 The judge dismissed the charges prior to trial upon the ground that the statutory prohibition was overly broad and unduly vague. More specifically, he found that the statute was facially defective because it swept indiscriminately across various types of lawful activities. He further concluded that the statutory language was not sufficiently precise to apprise potential offenders of the nature of the conduct proscribed. These infirmities were said to deprive defendant of substantive and procedural due process. We disagree and reverse.
The facts are not in dispute. The sparse record discloses that defendant was arrested by several members of the Atlantic City Police Department. At the time of his arrest, defendant was carrying what appeared to be a gym bag. No weapons were found upon defendant's person. In a cursory search of the bag, however, the police discovered a 12 inch non-folding kitchen knife. While being transported to police headquarters, defendant stated that he "was going to cut Angelo up like a chicken." The Atlantic County Grand Jury subsequently returned a multi-count indictment. The first count charged defendant with possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, contrary to the provisions of N.J.S.A. 2C:39-5d. This appeal pertains solely to the second count which charged defendant with possession of a weapon having previously been convicted of a crime in violation of N.J.S.A. 2C:39-7. Prior to trial, defendant moved to dismiss the latter charge contending that the statutory proscription "suffered from overbreadth" and claiming that the definitional language was "void for vagueness."
*558 Relying upon his previously rendered decision in State v. Williams, 194 N.J. Super. 590 (Law Div. 1984), the trial judge granted defendant's motion. In his opinion, the judge noted that the statute had been authoritatively construed in State v. Brown, 185 N.J. Super. 489, 493 (App.Div. 1982) as not requiring proof of an unlawful purpose to use the weapon. Stated somewhat differently, the statute was said to proscribe the mere possession of any implement falling within the purview of N.J.S.A. 2C:39-1r without regard to the offender's purpose or intent. So construed, the trial court determined that the statute ran afoul of the Fourteenth Amendment's due process clause. In prohibiting possession of a weapon without consideration of possible exculpatory circumstances, the statute was said to be overly broad and unduly vague. Although count two was dismissed, defendant proceeded to trial with respect to the other charge and was subsequently acquitted. As noted, this appeal pertains solely to the trial judge's pretrial order granting defendant's motion and dismissing the second count of the indictment.

I
Preliminarily, we entertain serious doubts that defendant had standing to challenge the constitutionality of N.J.S.A. 2C:39-7 upon the grounds of overbreadth and vagueness. We emphasize that the statute was held to be facially defective because it encompassed within its proscription hypothetically innocent uses of a weapon by a convicted person. Our examination of the record does not disclose any factual contention by defendant that his possession of the knife was in pursuit of a lawful purpose. In point of fact, the totality of the evidence presented at the subsequent trial supports a contrary conclusion. In any event, it is an unassailable tenet of our judicial system that courts will not render judgments on federal constitutional questions unless presented in the form of an actual factual or legal dispute. To be sure, unlike its federal counterpart, "there is no express language in New Jersey's Constitution *559 which confines the exercise of our judicial power to actual cases and controversies." Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971). Further, our decisions have historically taken a much more liberal approach on the issue of standing than have the federal cases. Id. at 101. See also Walker, Inc. v. Stanhope, 23 N.J. 657, 660-661 (1957); New Jersey Bankers Assoc. v. Van Riper, 1 N.J. 193, 196-197 (1948). This much conceded, our Supreme Court recently had occasion to note that "any determination of who has standing to assert federal constitutional rights must be made in keeping with federal law." State v. Alston, 88 N.J. 211, 229 n. 12 (1981). We need not dwell upon the issue, however, because both the federal and State systems have traditionally refused to "render advisory opinions or function in the abstract." Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., supra 58 N.J. at 107. See also State v. Saunders, 75 N.J. 200, 208 (1977); In re Quinlan, 70 N.J. 10, 34 (1976), cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). In other words, "[s]tatutes are not examined in the abstract without reference to conduct in assessing their constitutionality." State v. Colon, 186 N.J. Super. 355, 358 (App.Div. 1982). Deeply embedded in our jurisprudence is the settled principle against resolving disputes in advance of constitutional necessity. The doctrine was established as early as 1793, see H. Johnson, Correspondence and Public Papers of John Jay, pp. 486-489 (1891), and has been applied without significant deviation. Flast v. Cohen, 392 U.S. 83, 96 n. 14, 88 S.Ct. 1942, 1950 n. 14, 20 L.Ed.2d 947, 959 (1968). See also United States v. Freuhauf, 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476, 483 (1961); Federation of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725, 1734 (1944); Muskrat v. United States, 219 U.S. 346, 348, 31 S.Ct. 250, 55 L.Ed. 246, 247 (1911). In short, our authority is confined to deciding questions presented in an adversary context and in a form capable of resolution through the judicial *560 process. Flast v. Cohen, 392 U.S. at 95, 88 S.Ct. at 1949, 20 L.Ed.2d at 958. Whether grounded in constitutional principle or viewed as a mere policy limitation, our courts have long avoided passing prematurely on constitutional questions. Judicial authority should be invoked only when the interests of the litigants require protection against actual governmental interference. Thus, the related doctrines of standing, ripeness and mootness that have evolved over the years are incidents of the "primary conception that ... judicial power is to be exercised to strike down legislation ... only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." Poe v. Ullman, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989, 996 (1961). See also Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Cf. United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). The party who seeks to "annul legislation on grounds of its unconstitutionality must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement." Poe v. Ullman, 367 U.S. at 505, 81 S.Ct. at 1756, 6 L.Ed.2d at 997. See also New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (1982); Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830, 839 (1973); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960).
These well settled principles have particular validity when considered within the context of constitutional challenges based upon alleged facial overbreadth and vagueness. It has been recognized that these doctrines constitute "strong medicine" and are to be applied sparingly and "only as a last resort." Broadrick v. Oklahoma, 413 U.S. at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 841. One whose conduct clearly falls within the statutory prohibition may not assert the constitutional *561 rights of others based upon hypothetical situations.[3]See, e.g., State v. Saunders, supra 75 N.J. at 208-209; State v. Norflett, 67 N.J. 268, 276 (1975); State v. Young, 57 N.J. 240, 254 (1970); State v. Moretti, 52 N.J. 182, 192 (1968), cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); State v. Colon, supra, 186 N.J. Super. at 358. We do not have a "roving Commission" to seek and destroy unconstitutionality. Note, "The First Amendment Overbreadth Doctrine," 83 Harv.L.Rev. 844, 846 (1970) (quoting Cox, The Warren Court, p. 479 (1965)). A court may not lightly undertake to declare a statute unconstitutional. "[N]or should it consider doing so, where the attack is mounted by one as to whom the statute may readily be held to be constitutional." State v. Cappon, 118 N.J. Super. 9, 21 (Law Div. 1971). Applying these principles, we harbor serious reservations with respect to whether the issues ultimately determined by the trial judge were appropriately before him.

II
In any event, we are entirely satisfied that the statutory proscription is not violative of due process. In State v. Lee, 96 N.J. 156 (1984), our Supreme Court recently had occasion to consider and reject the identical argument advanced here with *562 reference to N.J.S.A. 2C:39-5d which prohibits possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have. Overruling In re T.E.T., 184 N.J. Super. 324 (App.Div. 1982), the Court first held that the "Legislature did not require proof of an intent to use a weapon for an unlawful purpose as an element of a violation of [N.J.S.A.] 2C:39-5d." Id. 96 N.J. at 163. The Court went on to consider whether the statute as interpreted was unconstitutionally vague or overbroad. In determining the issue of overbreadth, the Court held that the statutory proscription did "not reach any constitutionally-protected conduct." Id. at 165. According to the Court, the statute did not extend "too far in fulfilling the State's interest." Ibid. The Court also concluded that the enactment was not unduly vague. Specifically, the Court determined that the statutory language provided "sufficient warning so that an ordinary person `is apprised with a reasonable degree of certainty of that which is proscribed.'" Id. at 166 (quoting State v. Joas, 34 N.J. 179, 187 (1961)).
We are convinced that these considerations apply with equal force here. As noted by our Supreme Court, "the overbreadth doctrine is [generally] invoked when an enactment impinges upon first amendment rights." State v. Lee, supra, 96 N.J. at 165. See, e.g., Broadrick v. Oklahoma, 413 U.S. at 611-612, 93 S.Ct. at 2915-16, 37 L.Ed.2d at 839-40; Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627, 634 (1972); United States v. Robel, 389 U.S. 258, 262, 88 S.Ct. 419, 422, 12 L.Ed.2d 508, 513 (1967). The theoretical basis underlying the overbreadth principle is that "[a]n overbroad statute might serve to chill protected speech." Bates v. State Bar of Arizona, 433 U.S. at 380, 97 S.Ct. at 2707, 53 L.Ed.2d at 833. It has been said that First Amendment interests are particularly fragile and that "a person who contemplates protected activity might be discouraged by the in terrorem effect of the statute." Ibid. See also NAACP v. Button, 371 U.S. at 433, 83 S.Ct. at 338, 9 L.Ed.2d at 418. The overbreadth doctrine, thus, "reflects the conclusion that the possible harm *563 to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted." Bates v. State Bar of Arizona, 433 U.S. at 380, 97 S.Ct. at 2707, 53 L.Ed.2d at 834. These considerations are far less compelling within the context of conduct not specifically protected by the First Amendment. In that regard, the United States Supreme Court has held that "where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to [its] plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842.
Here, no First Amendment rights are implicated. Nor does the statutory prohibition substantially impinge upon constitutionally protected conduct. Rather, the clear statutory purpose is to "deter those previously convicted of serious crimes from possessing dangerous weapons." State v. Harper, 153 N.J. Super. 86, 89 (App.Div. 1977). See also State v. Middleton, 143 N.J. Super. 18, 23 (App.Div. 1976), aff'd 75 N.J. 47 (1977). There clearly is a rational nexus between the statute and a valid legislative purpose. We, thus, hold that N.J.S.A. 2C:39-7 is not overly broad.
We are also convinced that the statute is not unduly vague. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient clarity "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983). See also Village of Hoffman Estates v. Flipside, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 368 (1982), reh. den. 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). See also State v. Lee, supra, 96 N.J. at 165; Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983); State v. Lashinsky, 81 N.J. 1, 17 (1979). Where the statute does not provide precise guidelines, it may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Smith v. Goguen, *564 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974). The test, however, "does not consist of a linguistic analysis conducted in a vacuum." In re Suspension of De Marco, 83 N.J. 25, 37 (1980). Rather, the statute must be read within the context of the "reality to which the provision is to be applied." Ibid.
Applying these standards, we are fully satisfied that N.J.S.A. 2C:39-7 is sufficiently precise in its language to apprise the citizenry of the conduct proscribed. In our view, the statute provides fair notice of the activities prohibited and does not constitute "a trap for a person of ordinary intelligence acting in good faith." State v. Lee, supra, 96 N.J. at 166. See also State v. Wright, 96 N.J. 170 (1984). We are also satisfied that the statute is sufficiently definitive in its terms to preclude arbitrary and discriminatory enforcement.

III
We hold that the provisions of N.J.S.A. 2C:39-7 fully comport with the requirements of substantive and procedural due process. Nevertheless, we are not insensitive to the concerns expressed by the trial judge. We, too, are troubled by the prospect that, if read literally, the statutory language might encompass conceivably innocent situations which the Legislature could not have intended as the subject of prosecution. We do not suggest, therefore, that the statute is to be applied in blanket fashion without reference to exculpatory circumstances. In State v. Brown, supra, 185 N.J. Super. at 493, we held that N.J.S.A. 2C:39-7 does not require proof of an intent to use a weapon for an unlawful purpose. We adhere to that decision. Nonetheless, we recognize that some objects that may be used as weapons also have more innocent purposes. Experience sadly teaches us that almost any instrument can be "readily capable of lethal use or of inflicting serious bodily injury" and, thus, technically fall within the definition of weapon set forth in N.J.S.A. 2C:39-1r. As aptly noted by our Supreme Court, "[t]he underlying problem is protecting citizens from the threat *565 of harm while permitting the use of objects ... in a manner consistent with a free and civilized society." State v. Lee, supra, 96 N.J. at 162. We believe that the tension between these competing objectives can best be alleviated by applying N.J.S.A. 2C:39-1r and N.J.S.A. 2C:39-7 in a manner consistent with the clear legislative purpose; i.e., to prevent possession of dangerous weapons by previously convicted persons. We hold that where the object is capable of both innocent and unlawful purposes the circumstances attending its possession may be considered. We note that the circumstances identified in State v. Lee, supra at 162 and State v. Green, 62 N.J. 547, 560 (1973) are relevant to the factual inquiry whether an object constitutes a weapon for the purpose of N.J.S.A. 2C:39-1r and N.J.S.A. 2C:39-7. More specifically, the size, shape and condition of the object, whether it was concealed, and the time, place and actions of the carrier are material circumstances in determining when the particular implement constitutes a weapon under the provision of N.J.S.A. 2C:39-1r.
We recognize that our construction of N.J.S.A. 2C:39-1r and N.J.S.A. 2C:39-7 brings into play factors that are generally considered in determining whether possession of a weapon is for "circumstances not manifestly appropriate for such lawful uses as it may have" under N.J.S.A. 2C:39-5d. State v. Lee, supra, 96 N.J. at 162. We are also not unmindful of the legislative history pertaining to the definition of weapon which was recently recounted in State v. Lee, supra at 163. Specifically, the original draft of the Code defined weapon as "anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have." New Jersey Law Revision Commission, New Jersey Penal Code, Vol. I: Report and Penal Code, 135 (1971) (proposed 2C:39-1p). (emphasis added). The underscored phrase was ultimately deleted from the definition of weapon and placed in N.J.S.A. 2C:39-5d. This much conceded, we believe that the definition of weapon cannot fairly be considered in a vacuum. Rather, we are convinced that the attendant *566 circumstances often determine whether an object is "readily capable of lethal use and of inflicting serious bodily injury." N.J.S.A. 2C:39-1r. We construe the statute accordingly.

IV
In sum, we hold that N.J.S.A. 2C:39-7 is not overly broad or unduly vague. We construe the statute as permitting consideration of the relevant circumstances surrounding the accused's possession of the object. To the extent that the holding in State v. Williams, supra, is inconsistent with this opinion, it is overruled. Accordingly, the order granting defendant's motion to dismiss Count Two of the indictment is reversed. The matter is remanded for trial.
NOTES
[1] N.J.S.A. 2C:39-7 reads as follows:

Any person, having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, or sexual assault, whether or not armed with or having in his possession any weapon enumerated in section 2C:39-1r., or any person who has ever been committed for a mental disorder to any hospital, mental institution or sanitarium unless he possesses a certificate of a medical doctor or psychiatrist licensed to practice in New Jersey or other satisfactory proof that he is no longer suffering from a mental disorder which interferes with or handicaps him in the handling of a firearm, or any person who has been convicted for the unlawful use, possession or sale of a controlled dangerous substance as defined in article 2 of P.L. 1970, c. 226 (C. 24:21-3 et seq.), who purchases, owns, possesses or controls any of the said weapons is guilty of a crime of the fourth degree.
Whenever any person shall have been convicted in another state, territory, commonwealth or other jurisdiction of the United States, or any country in the world, in a court of competent jurisdiction, of a crime which in said other jurisdiction or country is comparable to one of the crimes enumerated above, then that person shall be subject to the provisions of this section.
[2] N.J.S.A. 2C:39-1r reads as follows:

"Weapon" means anything readily capable of lethel use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; and (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cestus or similar leather bands studded with metal filings or razor blades imbedded in wood; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.
[3] An exception exists with respect to challenges based upon First Amendment rights. In that context, the United States Supreme Court has permitted attacks on overly broad statutes without requiring that the person mounting the challenge demonstrate that in fact his specific conduct was protected. See Bates v. State Bar of Arizona, 433 U.S. 350, 379-380, 97 S.Ct. 2691, 2706-2707, 53 L.Ed.2d 810, 833 (1977); Bigelow v. Virginia, 421 U.S. 809, 815-816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600, 608 (1975); Gooding v. Wilson, 405 U.S. 518, 521-522, 92 S.Ct. 1103, 1105-1106, 31 L.Ed.2d 408, 413 (1972); Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22, 28 (1965). See also In re Hinds, 90 N.J. 604, 617 (1982). "The reason for the special rule in First Amendment cases is apparent: An overbroad statute might serve to chill protected speech." Bates v. State Bar of Arizona, 433 U.S. at 380, 97 S.Ct. at 2707, 53 L.Ed.2d at 833. The same principle is applicable with respect to associational rights. See NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405, 418 (1963).