**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1508-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AL J. DELBRIDGE, JR.,
a/k/a AL J. DELBRIDGE,
and AL J. DELBRIDE, JR.,

     Defendant-Appellant.

_____

Argued September 21, 2020 – Decided July 21, 2021

Before Judges Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-03-0372.

David A. Gies, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; David A. Gies, on the briefs).

Ednin D. Martinez, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Ednin D. Martinez, on the brief).

PER CURIAM

Defendant Al J. Delbridge, Jr. is a person who, based on a prior conviction, is prohibited by N.J.S.A. 2C:39-7(b)(1) from possessing a handgun. He appeals his August 1, 2018 judgment of conviction and sentence for violating this statute. Defendant contends the trial court committed reversible error and deprived him of a fair trial by not instructing the jury to consider his purpose in possessing a handgun and the defense of mistake. He claims he intended to turn the handgun into the police as part of a local buyback program. Defendant also appeals his sentence, arguing the trial court failed to consider the real-time consequences of the sentence. We affirm defendant's conviction and sentence.

I.

On November 12, 2014, defendant was arrested in Jersey City for possession of a handgun. He was charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); second-degree certain person not to have a weapon due to prior conviction, N.J.S.A 2C:39-7(b) (count two); fourth-degree possessing a defaced firearm, N.J.S.A. 2C:39-3(d) (count three); fourth-degree resisting arrest purposefully, N.J.S.A. 2C:29-2(a) (count four); and fourth-degree obstructing a criminal investigation, N.J.S.A 2C:29-1 (count five). The State dismissed all counts against defendant except for count

A-1508-18

two, certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1), and he was tried before a jury on this single count.

We glean the relevant facts from the trial. Officer Matthew Scalcione of the Jersey City Police Department testified that on November 12, 2014, he saw a man, later identified as defendant, walking westbound on Bostwick Avenue in the direction of MLK Drive. Defendant made a left onto MLK Drive and then an abrupt turn in the opposite direction. When defendant saw Officer Scalcione and his partner, "his facial expression change[d] and his hands went towards his waistband," which drew the officer's attention, and he saw a bulge. Officer Scalcione ordered defendant to show his hands and he raised them saying "I ain't got nothing," but defendant's motion lifted his sweatshirt and Officer Scalcione saw the butt of a gun. Defendant ran as Officer Scalcione ordered him to stop. When defendant was tackled, Officer Scalcione heard a "metal clunk" on the ground. A silver .38 caliber Lorcin handgun with a black grip handle was recovered. It was defaced but loaded with one round in the chamber and three rounds in the magazine. Tests on the gun found it to be operable.

Defendant testified he was returning home at about 8:30 p.m. after drinking "a little bit" with friends at the barber shop where he worked. There was trash laying outside a garbage can in front of his apartment house. He

3

picked it up but it was "much heavier than [he] anticipated," and he realized it was a handgun. Defendant contacted his friend Mike, who told him about a gun buyback program. He took the handgun inside because there were children outside.

Defendant's fiancée also told him about a gun buyback program, suggesting he take it to the police station. Defendant ate dinner, took about a "half-an-hour" to sober up so he would not "look[ ] crazy," tucked the gun in his "left pocket" and left his apartment at about 10:20 p.m.

The police station was a few blocks away on Bergen Street. Before defendant reached it, he saw police cars pull up for what he thought was a raid on "the guys that's on the corner hustling." To avoid "mess[ing] up [the police] investigation," he "did an about-face" away from the police and people on the corner. Two police officers "rush[ed]" him. He claimed he raised his hands and said he had a gun in his pocket, but the police started to hit him. He "panicked" and ran, but the police tackled him to the ground. He said he told the police he found the handgun and did not intend to keep it.

At the conclusion of the trial, defendant's counsel requested jury instructions on two issues: the defense of mistake and defendant's purpose in possessing the handgun. He argued defendant did not have the mens rea to

4

violate N.J.S.A. 2C:39-7(b) "because he believed that there was some sort of a buyback program or that . . . he was able to give that gun to the police station without incident . . . ." Counsel also argued the jury should consider defendant's purpose in possessing the weapon and asked the court to read a hypothetical to the jury from the commentaries to N.J.S.A. 2C:2-1(c), which read as follows:

> A hypothetical situation involving this principle would be where the actor took narcotics from his minor child and was arrested en route to the police station, where the actor intended to turn in the narcotics. In such a hypothetical, there would have been knowing possession, but there would not have been sufficient time to allow the actor to have terminated possession because he was engaged in an endeavor to terminate possession at the time that he was arrested.

The State opposed the proposed instructions. In denying defendant's requests, the trial court reasoned "the subjective intent" did not have to do with turning in the weapon. "The mens rea is about possessing a weapon or not possessing a weapon." The court noted "[t]he question [was] whether [defendant] had the specific intent, [or] knowledge, that he possessed a weapon." The court found this case did not involve a mistake of fact because defendant knew the handgun was not a toy, and it also did not involve a mistake of law because the law was clear. The trial court added that it would provide a clarification to the jury if it had a question about possession.

5

Relying on the model criminal charge for certain persons not to have weapons, the court instructed the jury that the State was required to prove the three elements of the offense beyond a reasonable doubt. The second element was whether defendant "knowingly purchased, owned, possessed or controlled the firearm on November 12, 2014." The court instructed the jury on issues of knowledge, possession and actual possession. In relevant part, the jury was instructed that

> [p]ossession cannot merely be . . . passing control, fleeting, or uncertain in its nature. In other words, to "possess" within the meaning of the law, the defendant must knowingly procure or receive the item possessed or be aware of his control thereof for a sufficient period of time to have been able to relinquish his control if he chose to do so.

During deliberations, the jury sent a note asking questions. They requested the "definition of possession and intent." In response, the court reread the "certain persons offense" portion of the charge.

The jury also asked "[d]oes intent have any relevance to possession?" Outside the presence of the jury, defense counsel argued that defendant's intent to surrender the handgun meant he did not possess it under the statute. The State argued "possession and intent are two different things." All that the State needed

6

A-1508-18

to show was defendant knew this was a handgun and he possessed or had control over it.

The court rejected defense counsel's arguments. It resolved the jury's question by rereading a portion of the certain persons charge that included the passage: "[t]o 'possess' an item under the law, one must have a knowing, intentional control of that item accompanied by a knowledge of its character." The court added that "[i]ntent is in that very definition . . . ." Therefore, in answering "does intent have any relevance to possession," the court said that "it does . . . in that context." Shortly after this, the jury returned a verdict of guilty on the charge of certain persons not to possess a firearm.

Defendant's motion for a new trial was denied. The trial court explained it declined to read the hypothetical to the jury because the instructions gave "a complete and adequate definition of possession." The hypothetical was "misleading," was "not sufficient[ly] analogous" and would not help the jury. The trial court did not agree that the jury should have been instructed to consider defendant's purpose in possessing the handgun or the defense of mistake. The State did not have to prove defendant possessed the handgun for an unlawful purpose — just that "he possessed the firearm for a sufficient period of time to have been able to relinquish its control." In a certain persons case,

7

"[d]efendant's intent with the weapon is not an element of the crime."  The trial court also rejected defendant's argument about mistake.  "[I]t would not matter if the defendant believed he could surrender the firearm.  That mistake has no bearing on his knowledge of possession."

Defendant's requested waiver of the five-year mandatory minimum sentence requirement under N.J.S.A. 2C:43-6.2, was denied.  The court found that a conviction under N.J.S.A. 2C:39-7(b)(1) for a certain persons offense is not subject to the "escape valve" provision of N.J.S.A. 2C:43-6.2.

Defendant was sentenced to a five-year term of imprisonment subject to a five-year period of parole ineligibility.  In sentencing defendant, the judge found aggravating factors three (risk of committing another offense), six (prior criminal record and seriousness of offense) and nine (need to deter) were in "equipoise" to mitigating factors seven (defendant has led a law-abiding life for a substantial period of time) and eleven (imprisonment would entail excessive hardship).  See N.J.S.A. 2C:44-1.  The court denied defendant's request to apply mitigating factors one, two, four, eight and ten.  See ibid.

On appeal, defendant raises the following arguments:

POINT ONE

WHERE AN ACCUSED OFFERS AS A DEFENSE A CONCEIVABLY INNOCENT SITUATION TO AN

ALLEGED VIOLATION OF N.J.S.A. 2C:39-7, THE TRIAL JUDGE SHOULD INSTRUCT THE JURY THAT DEFENDANT'S PURPOSE OF POSSESSION MAY BE CONSIDERED AS RELEVANT.

POINT TWO

THE TRIAL JUDGE'S FAILURE TO CHARGE THE JURY WITH DEFENDANT'S "PURPOSE OF POSSESSION" DEFENSE DENIED DEFENDANT A FAIR TRIAL.

A. The trial judge's failure to tailor its jury instruction on "possession" to the unique facts of the case deprived defendant of a fair trial.

B. The repetition of abstract legal principles in response to the jury's question about "possession" and "intent" exacerbated the jury's misunderstanding.

POINT THREE

THE TRIAL JUDGE ERRED WHERE IT DID NOT EXPLAIN TO THE JURY THE EFFECT OF DEFENDANT'S MISTAKEN UNDERSTANDING, IF BELIEVED, ON THE SPECIFIC KNOWLEDGE REQUIRED TO CONVICT.

POINT FOUR

THE TRIAL JUDGE'S REFUSAL TO CONSIDER THE REAL-TIME CONSEQUENCES OF THE PAROLE DISQUALIFIER PERIOD OF N.J.S.A. 2C:39-7 IN LIGHT OF THE AGGRAVATING AND MITIGATING FACTORS WAS A MANIFEST DENIAL OF JUSTICE.

II.

A.

Defendant contends the trial court erred because the jury was not instructed about his purpose for possessing a handgun; it did not instruct the jury that his purpose for possessing the handgun was relevant to the charge against him and did not include the requested hypothetical. By not tailoring the charge to fit the facts of this case, defendant argues he was denied a fair trial. He claims the trial court confused the jury by simply repeating its prior instructions when it answered the jury's question about whether intent has any relevance to possession.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). "A reviewing court 'must evaluate a challenged jury instruction in the context of the entire charge to determine whether the challenged language was misleading or ambiguous . . . .'" State v. Lora, 465 N.J. Super. 477, 498 (App. Div. 2020) (quoting State v. Nelson, 173 N.J. 417, 447 (2002)). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

A jury charge is presumed to be proper when it tracks the model jury charge verbatim because the process to adopt model jury charges is "comprehensive and thorough." State v. R.B., 183 N.J. 308, 325 (2005). Here, the trial judge's instruction on certain persons not to have weapons tracked the model criminal jury charges verbatim.

Defendant argues the judge should have molded the charges to better fit the facts of this case. "Ordinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." State v. Concepcion, 111 N.J. 373, 379 (1988). However, the facts of this case were not confusing or complex and did not "require an intricate discussion in the charge." State v. Morton, 155 N.J. 383, 422 (1998). Defendant's objection is that the court did not incorporate the purpose of possession concept into the charge; he does not contend that it failed to explain the material facts to the jury. There was no reason to further mold the charge.

Defendant was convicted in 1995 of possession of a controlled dangerous substance with intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7(a). This statute is one of the offenses listed in N.J.S.A. 2C:39-7(b)(1), which prohibits a person with such a conviction from "purchas[ing], own[ing], possess[ing] or control[ling] a firearm . . . ." Defendant acknowledges he could

11

not possess a weapon. He argues his intent in possessing it — to turn it into the police — negated any mens rea within the statute because he did not have an intent to have possession of the handgun for "a sufficient period to have been able to terminate his possession."

We agree with the trial judge in rejecting the purpose of possession instruction. To prove a violation of the certain persons statute, the State was required to prove beyond a reasonable doubt that there was a firearm, that defendant "purchased, owned, possessed or controlled the firearm," and that defendant "is a person who previously has been convicted of [a certain enumerated crime named in the statute] . . . ." Model Jury Charges (Criminal), "Certain Person Not to Have Any Firearms, (N.J.S.A. 2C:39-7(b)(1))" (rev. Feb. 12, 2018). The court instructed the jury directly from the model charge that "to possess an item under the law, one must have a knowing intentional control of that item accompanied by a knowledge of its character." Ibid. (footnote omitted). The court read this to the jury twice.

The trial court did answer the jury's questions. It advised the jury that intent had relevance in the context of the "knowing intentional control" of a weapon. However, the purpose of defendant's possession was not part of the statute. Therefore, the court was correct not to include "purpose of possession"

12

as an additional requirement. The trial court was not required to tailor the jury charge in this manner. There was nothing confusing about the instructions given by the court.

The trial court did not err in excluding the requested hypothetical. Factually, it had nothing to do with this case, nor was there any indication it applied to a conviction under N.J.S.A. 2C:39-7(b)(1).

The trial court's instructions to the jury were consistent with prior cases. In State v. Brown, the defendant was arrested for shoplifting with a boning knife in his possession. 185 N.J. Super. 489, 492 (App. Div. 1982). On appeal from his conviction under N.J.S.A. 2C:39-7, the defendant argued the trial court should have instructed the jury to consider whether his purpose for possessing the knife was to use it as a weapon. We affirmed the defendant's conviction holding that his construction of N.J.S.A. 2C:39-7 would render it "meaningless" because it then would not be any different than N.J.S.A. 2C:39-4(d), which makes it a criminal offense for a person to have in his possession a weapon "with a purpose to use it unlawfully against the person or property of another . . . ." We concluded there was no need to prove "purpose of possession" under N.J.S.A. 2C:39-7. Brown, 185 N.J. Super. at 493. All that was needed for a conviction was "proof, beyond a reasonable doubt, of mere possession by the

A-1508-18

convicted felon of one of the weapons enumerated in N.J.S.A. 2C:39-1r . . . ."
Ibid.

In State v. Jones, the defendant was arrested carrying a gym bag that, when it was searched, contained a twelve-inch knife. 198 N.J. Super. 553, 557 (App. Div. 1985). We rejected arguments that N.J.S.A. 2C:39-7 was overly broad and void for vagueness. The "clear statutory purpose is to 'deter those previously convicted of serious crimes from possessing dangerous weapons.'" Id. at 563 (quoting State v. Harper, 153 N.J. Super. 86, 89 (App. Div.1977)). We expressed concern that some objects could be used as weapons and also have innocent uses. In that situation, "the circumstances attending . . . possession may be considered." Id. at 565.

That was not the situation here. There was no question the object defendant possessed was a handgun and he knew it at the time. There also was no question that given his prior conviction, he was proscribed from possessing a handgun. Jones does not suggest that "circumstances attending possession" must be considered when the nature of the weapon is clear.

The authority cited by defendant does not require a different result. In State v. Martin, the defendant was charged with murder in the arson death of the victim. 119 N.J. 2, 5 (1990). The jury charge followed the prosecution's theory

of the case that the defendant deliberately set a fire by using an accelerant but did not include facts suggested by the defendant that the fire was accidental. The Court determined the defendant's version of the facts should have been included.

That was not the situation here. There was no disagreement about the facts; the issue was whether defendant's purpose of possession negated an element of the offense. The case has no application here. We are satisfied the trial court did not err in its instruction to the jury, its denial of defendant's request to read the requested hypothetical or in its response to the jury's questions.

## B.

Defendant argues the trial court should have instructed the jury about the defense of mistake because he thought he could carry the handgun to the police station to turn it in. He also did not know the gun buyback program had stopped. Defendant argues these mistakes negated his intent to possess the firearm.

We find no error by the trial court in rejecting these arguments. The State was required to prove beyond a reasonable doubt that defendant "acted knowingly in possessing the item." To find defendant guilty, he must have knowingly purchased, owned, possessed or controlled the weapon. N.J.S.A.

15

2C:39-7(b); see Model Jury Charges (Criminal), "Certain Persons Not to Have Any Firearms, (N.J.S.A. 2C:39-7(b)(1))" n.9 (rev. Feb. 12, 2018) (stating "N.J.S.A. 2C:2-2(c)(3) applies the culpable state of knowingly pursuant to N.J.S.A. 2C:2-2(b)(2) to this statutory crime."). "For a person to act knowingly with respect to the nature of his conduct or the attendant circumstances, he must be aware of the nature of his conduct or the presence of such circumstances or of a high probability they are present." State v. Overton, 357 N.J. Super. 387, 393 (App. Div. 2003) (citing N.J.S.A. 2C:2-2(b)(2)).

None of defendant's arguments negate his knowledge. The certain persons offense required knowing possession. There was no mistake by defendant that he knew this was a handgun. By convicting defendant, the jury determined the handgun was within his control "for a sufficient period of time to have been able to relinquish his control, if he chose to do so." His alleged mistaken understanding about the buyback program or his ability to carry the handgun to the police station to turn it in did not negate his knowing intentional control.

In State v. Wickliff, a bail collection agent entered a home in search of a fugitive without consent and later was convicted of fourth-degree criminal trespass. 378 N.J. Super. 328, 331 (App. Div. 2005). He argued he was mistaken about his legal authority to enter the home. In rejecting his argument,

16

we held that "[t]he mistakes of law covered by subsection (a) [N.J.S.A. 2C:2-4(a)] do not involve errors over whether actions are criminal; they are mistakes concerning legal issues that are relevant to proof of the elements of an offense." Id. at 335.

None of the alleged mistakes here related to the elements of the certain persons not to possess weapons offense. Defendant knew about the gun and decided to take control of it while determining what to do with it.

In State v. Sexton, the defendant was handed a gun that he was told was not loaded and while handling it, the gun discharged, killing the victim. 160 N.J. 93, 95 (1999). Although the Court held that this factual mistake was relevant to negate the required mental state for the charge of murder, which is a specific intent crime, it did not negate the mental state for reckless manslaughter. Id. at 102-05.

Here, defendant's mistake about the buyback program did not negate his knowing possession of the handgun. We are satisfied the trial court did not err by rejecting defendant's request to charge the jury with the defense of mistake.

C.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We must determine whether:

17

(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Defendant contends the trial court erred by not considering the real time consequences of the five-year period of parole disqualification based on its conclusion the "escape valve" provision of N.J.S.A. 2C:43-6.2 did not apply to a conviction under N.J.S.A. 2C:39-7(b)(1).

A conviction under N.J.S.A. 2C:39-7(b)(1) carries a minimum term of imprisonment "which shall be fixed at five years, during which the defendant shall be ineligible for parole." Defendant was sentenced in accord with this statute.

The Graves Act escape valve provision in N.J.S.A 2C:43-6.2 does not apply to a conviction under N.J.S.A. 2C:39-7(b)(1). The escape valve statute applies to sections N.J.S.A. 2C:39-7(b)(2) and (b)(3), but not subsection (b)(1). See N.J.S.A. 2C:43-6(c); see also State v. Nance, 228 N.J. 378, 390 n.1 (2017) (explaining which offenses fall under The Graves Act).

We are not to "'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" State v. Rivastineo, 447 N.J. Super. 526, 529-30 (App. Div. 2016) (alteration in original) (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)). Although N.J.S.A. 2C:39-6.2 provides for exceptions to mandatory minimum sentences, the only section relevant here is subsection (a), and that subsection only applies to defendants under the escape valve provision of N.J.S.A. 2C:39-6(c). Because defendant is not within section 6(c), he cannot be within section 6.2(a). Therefore, we agree with the trial court that the Graves Act escape value does not apply here.

We are satisfied the trial court did not abuse its discretion in sentencing defendant. "A judge's sentencing analysis is a fact-sensitive inquiry, which must be based on consideration of all the competent and credible evidence raised by the parties at sentencing." State v. Jaffe, 220 N.J. 114, 116 (2014).

In this case, the court carefully considered all the relevant aggravating and mitigating factors, explaining why it found and rejected certain factors and the weight given to each. As the court noted, defendant walked on the streets of Jersey City with a loaded gun, ran from the police, and then struggled with them when he was apprehended. Plainly, the jury rejected his arguments. There was

19

nothing shocking about the sentence given his conviction under N.J.S.A. 2C:39-7(b)(1).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1508-18