875 A.2d 1009 (2005)
378 N.J. Super. 328
STATE of New Jersey, Plaintiff-Respondent,
v.
Kenneth WICKLIFF, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 2005.
Decided June 17, 2005.
*1010 Richard R. Capone argued the cause for appellant.
Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General of New Jersey, attorney; Ms. Justus, of counsel and on the brief).
Before Judges PARRILLO, GRALL and CHAMBERS.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Tried by a jury, defendant, Kenneth Wickliff, was convicted of fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a), and acquitted of fourth-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-3(e).[1] He was sentenced to one-year probation and forty hours of community service. Appropriate fees and penalties were also imposed. Defendant appeals. We reverse because the trial judge failed to properly explain to the jury the effect of a mistake of law on a charge of criminal trespass, and because he erroneously limited defendant's presentation of this defense.
Defendant, co-defendant Evans, and co-defendant Grohman were bail collection agents who were trying to apprehend a fugitive, Keith Allen, who had jumped bail. They were employed by Ameritech, Inc., an independent company that performs fugitive recovery services for several bail bond agencies and insurance firms in this State and others. The trio were assigned Allen's file, which consisted of a December 6, 2001 bail bond application to Northwestern National Casualty Company, listing as "indemnitor" Allen's mother, Stephanie Jones, who also signed the form. Jones *1011 lived at 179 Bellow Drive, Mt. Royal, with her fiancé, Sterling Spence, his son and Jones' fourteen-year-old cousin. On the bail application form, Jones listed her Mt. Royal address as Allen's home address, and his actual residence, 904 Broad Street, Pleasantville, as his mailing address.
Two days prior to the incident in question, co-defendant Evans went to the Jones' home in search of Allen. He was informed by Jones and Spence that Allen did not live there. Jones, however, called Allen, and, as a result of a conversation with Evans, Allen arranged to voluntarily surrender at a set time and place. However, Allen sent a decoy instead. Consequently, on September 7, 2002, at about 3:00 a.m., the team of three arrived at the Jones' home in search of Allen. Before their arrival, they had contacted the county dispatcher to inform the authorities of their presence in the Mt. Royal area looking for the fugitive. They identified themselves, their purpose, their vehicles and gave their cell phone number.
Defendant approached and knocked on the front door of Jones' residence, backed-up by Grohman, who was standing a few feet behind defendant, and Evans, who secured the backyard area. When Jones and Spence answered, defendant and Grohman announced that they had been sent by the bail bond agency in search of Allen. They were advised that Allen was not present and did not reside there. Nevertheless, defendant and Grohman asserted their "right" to enter the residence in search of the fugitive, but Jones and Spence resisted. After a heated conversation, as Spence went to shut the front door, defendant stuck his foot in the door, preventing Spence from pushing the door shut. When Spence asked him to remove his foot, defendant said "No, you're messing with the law. You don't understand, we have a right to come in and search." Spence responded, "No, you do not. I told you [Allen] does not live here. You can't come in."
During the standoff, Jones called the police. When the officer arrived, he observed defendant and Grohman in the threshold of the front door with their bodies partially into the home, "exerting pressure on the door trying to get into the house ..." The police officer drew his weapon, ordered defendant and Grohman off the porch, and arrested all three men after Evans appeared from the back of the house.
Defendant testified that he was the lead investigator on Allen's case because of his prior training and experience as a police officer. He denied struggling over the door and claimed that he placed his foot on the threshold of the door only to maintain contact with Jones and Spence while he tried to convince them to let him and Grohman inside to search the premises.
After the court granted co-defendant Evans' motion for judgment of acquittal on the criminal trespass charge, the jury found defendant guilty of criminal trespass and acquitted both defendant and Evans of the charge of possession of a weapon for an unlawful purpose.
In appealing the judgment of conviction, defendant raises the following issues for our consideration:
I. THE INDICTMENT MUST BE DISMISSED BECAUSE THE STATE MISREPRESENTED THE LAW AND FAILED TO PROVIDE EXCULPATORY EVIDENCE TO THE GRAND JURY.
II. THE CHARGES SHOULD HAVE BEEN DISMISSED AS DE MINIMIS BECAUSE THE DEFENDANT WAS PERFORMING THE LEGAL ACTIVITY OF FUGITIVE *1012 RECOVERY AND ACTED REASONABLY.
III. IT WAS REVERSIBLE ERROR ON THE PART OF THE COURT NOT TO HAVE A JURY INSTRUCTION ON THE STATUS OF BAIL BONDS AND FUGITIVE RECOVERY LAW.
IV. THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INCLUDE AS PART OF THE TRESPASS INSTRUCTIONS THE STATUTORY LANGUAGE "REASONABLE BELIEF" WHICH IS THAT PART OF THE TRESPASS STATUTE THAT PROVIDES AN AFFIRMATIVE DEFENSE.
V. THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON A CLAIM OF RIGHT DEFENSE AS SUBMITTED BY COUNSEL.
VI. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT GAVE THE JURY THE TRADITIONAL BURGLARY DEFINITION OF ENTRY, AS OPPOSED TO [THE DEFINITION OF] ENTRY [FOR] FOURTH-DEGREE CRIMINAL TRESPASS.
VII. THE COURT COMMITTED REVERSIBLE ERROR BY NOT ALLOWING ADMISSION OF RELEVANT EVIDENCE ON THE TOPICS OF, A) STEPHANIE JONES' PAST EXPERIENCE WITH USING BAIL BOND COMPANIES TO BAIL OUT HER SON AND B) BY FORBIDDING DEVELOPMENT OF EVIDENCE ON THE TOPIC OF THE EDUCATIONAL ASPECT OF DEFENDANT'S TRAINING.
VIII. THE COURT SHOULD HAVE GRANTED THE MOTION FOR ACQUITTAL AFTER THE CLOSE OF THE STATE'S CASE BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO WARRANT A FINDING OF GUILT.
IX. THE COURT ERRED IN NOT PERMITTING THE DISPATCH COMMUNICATION TAPES TO BE PLAYED IN ITS ENTIRETY.
We are satisfied that the trial court's failure to properly instruct on the mistake-of-law defense was reversible error, compounded by its erroneous exclusion of evidence of this defense. We deem the remaining issues raised by defendant to be without merit.
We start with the well-settled proposition that the Sixth Amendment allows a defendant to assert any fact that will negate a material element of a crime. State v. Sexton, 160 N.J. 93, 104-05, 733 A.2d 1125 (1999). N.J.S.A. 2C:2-4(a) allows a defense of ignorance or mistake as to a matter of fact or law "if the defendant reasonably arrived at the conclusion underlying the mistake" and the mistake "negatives the culpable mental state required to establish the offense...." N.J.S.A. 2C:2-4(a)(1).
Thus, Section 2-4(a) of the Code of Criminal Justice (Code) provides for a complete defense to criminal liability based on a mistake of fact or matter of law. State v. Pena, 178 N.J. 297, 306, 839 A.2d 870 (2004). In fact, subsection (a) does not really create a separate defense; rather it serves to emphasize that a mistake may negate the culpability element required for conviction of an offense. In other words, mistake of fact and mistake of law are not true "defenses," but rather attacks on the *1013 prosecution's ability to prove the requisite mental state of the crime charged. Cannel, New Jersey Criminal Code Annotated, Comment 2 on N.J.S.A. 2C:2-4 (2005). In Sexton, supra, the Supreme Court concluded that subsection (a) was, in effect, technically unnecessary because it simply confirms that "`no person may be convicted of an offense unless each element ... is proven beyond a reasonable doubt.' If the defendant's ignorance or mistake makes proof of a required culpability element impossible, the prosecution will necessarily fail in its proof of the offense." 160 N.J. at 100, 733 A.2d 1125 (citation omitted). Because even an "unreasonable" mistake, i.e., negligence, may negate the mental state required for criminal liability when a higher culpability (recklessness, knowledge or purpose) is required for conviction, the Court found it necessary to conform the language of N.J.S.A. 2C:2-4(a) essentially to the language of Model Penal Code (MPC) § 2.04(1), by eliminating our Code's additional requirement that a defendant's mistake be "reasonable" and instead, focusing on "what is required for liability." Id. at 105-07, 733 A.2d 1125; see N.J.S.A. 2C:2-2(c)(2).
The mistakes of law covered by subsection (a) do not involve errors over whether actions are criminal; they are mistakes concerning legal issues that are relevant to proof of the elements of an offense. Cannel, supra, Comment 2 at 150. In this regard, it is important to distinguish between ignorance of the legal standard established by the statute the defendant is alleged to have violated, N.J.S.A. 2C:2-2, excusable only under the narrow terms available under subsection (c) of N.J.S.A. 2:2-4, and a mistake as to some external body of law which may destroy the mens rea for the crime charged, addressed in subsection (a) of that statute and modified in Sexton.
The basic proposition is that the accused need not be aware of the standard established by the criminal statute he is charged with having violated. Therefore, ignorance of, or mistake about, that statute does not effect the culpability requirement nor constitute a defense. This is the rule of § 2C:2-2(c) and is our law. (citations omitted).
Where, however, the crime requires mens rea and the mistake or ignorance negatives the particular culpability requirement under that statute, the mistake or ignorance excuses. Into this category fall the "specific intent" cases... where a mistake or ignorance of the law destroys that intent.
[Cannel, supra, Comment 5 at 153.]
Thus, for example, N.J.S.A. 2C:20-9 renders a person guilty of theft if, knowing he is under a legal obligation to dispose of property in a certain way, he instead retains the property as his own. However, if the person made a mistake as to the legal obligation, that mistake would negate the culpability element of theft. Cannel, supra, Comment 2 at 150. In State v. Grimes, 235 N.J.Super. 75, 561 A.2d 647 (App.Div.), certif. denied, 118 N.J. 222, 570 A.2d 976 (1989), a constable's conviction was reversed because his mistake concerning the scope of his job responsibilities negated the requirement of a knowing violation of official duty, in contravention of N.J.S.A. 2C:30-2.
Even ignorance of the legal standard of the crime with which a defendant is charged may excuse in certain limited circumstances, as where, for example, the law is not settled or is obscure. Cutter v. State, 36 N.J.L. 125 (Sup.Ct.1873); see also The New Jersey Penal Code, Commentary, Volume II (1971), and statutory notes on N.J.S.A. 2C:2-4. In this regard, N.J.S.A. 2C:2-4(c) establishes a good faith defense based on ignorance of the law *1014 where, among other things, there has been on the part of a defendant "reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous contained in ... [a] judicial decision, opinion, judgment or rule," or "diligent pursuit by all means available" to ascertain the meaning of the law. In such cases, it is incumbent on the defense to establish its theory of mistake of law by clear and convincing evidence. State v. Cross, 330 N.J.Super. 516, 523, 750 A.2d 160 (App.Div.2000); State v. Guice, 262 N.J.Super. 607, 616-17, 621 A.2d 553 (Law Div.1993).
Criminal trespass, for which defendant was convicted, requires specific knowledge. A person is guilty of criminal trespass "if, knowing that he is not licensed or privileged to do so, he enters... any structure...." N.J.S.A. 2C:18-3(a). The culpable mental state of the offense is knowledge that entry is unauthorized. State v. Braxton, 330 N.J.Super. 561, 566, 750 A.2d 185 (App.Div.2000). On this score, N.J.S.A. 2C:2-2(b)(2) states:
A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. "Knowing," "with knowledge" or equivalent terms have the same meaning.
Thus, a person is guilty of criminal trespass under N.J.S.A. 2C:18-3(a) only if he knows his entry is unauthorized, that is neither licensed nor privileged. State v. Braxton, supra, 330 N.J.Super. at 566, 750 A.2d 185. Unlike most crimes, as to which ignorance of the law is not material, see N.J.S.A. 2C:2-4, an essential element of this offense is defendant's knowledge, i.e., state of mind, that the entry is unauthorized. See N.J.S.A. 2C:2-2(c)(3).
Because mistake potentially negates the culpable mental state, once the defense is presented, it is incumbent upon the trial judge to properly explain to the jury the effect of mistake on the specific knowledge required for conviction. Indeed, "appropriate and proper charges to a jury are essential for [a] fair trial." State v. Green, 86 N.J. 281, 287, 430 A.2d 914 (1981). A trial judge must explain to the jury in an "understandable fashion its function in relation to the legal issues involved" by giving a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 287-88, 430 A.2d 914. Erroneous instructions regarding elements of an offense or defense are almost invariably regarded as prejudicial and as "poor candidates for rehabilitation under the harmless error philosophy." State v. Vick, 117 N.J. 288, 292, 566 A.2d 531 (1989). Put another way, the well established rule "presumes that a trial court's instructional error on a material issue constitutes reversible error." State v. Pena, supra, 178 N.J. at 319, 839 A.2d 870; State v. Warren, 104 N.J. 571, 579, 518 A.2d 218 (1986).
In this case, evidence of mistake about law providing a right to enter in the course of his duties was a substantial and essential feature of defendant's defense about which the trial court was required to properly instruct the jury by explaining precisely how the offered defense plays into the element of knowledge. Accord, State v. Concepcion, 111 N.J. 373, 379-80, 545 A.2d 119 (1988). Indeed, even the State acknowledges that defendant had a mistake-of-law defense, namely that he had a license or privilege as a bounty hunter under both the "Rule of Taylor," *1015 espoused in Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed 287 (1872), and the bail contract, to enter the Jones' residence to search for the fugitive Allen.
To this end, defendant adduced competent evidence tending to show his belief that he acted as a matter of right pursuant to lawful authority. In this regard, defendant relied on the most often quoted case in this area of the law, Taylor v. Taintor, supra, in which the United States Supreme Court defined the rights and powers of sureties and bail bondsmen at common law:
When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge. They may exercise their rights in person or by agent. They may pursue him into another State, may arrest him on the Sabbath, and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern [231], it is said: `The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.'
[Id. at 371-72, 21 L.Ed. at 290.][2]
Defendant also relied on court rules governing forfeiture, Rule 3:26-6, and exoneration, Rule 3:26-7, and on the bail contract between surety and principal as the underlying source of his authority to recapture the surety's principal.
Lest there be any doubt, the court itself acknowledged defendant's mistake defense based on defendant's belief that he had a legally-recognized privilege or license to enter Jones' home in search of the fugitive Allen. Consequently, the judge agreed to charge that defense. He started out by correctly pointing out what is required for liability to be established. On this point, the judge charged that criminal trespass has two elements: (1) "that defendant entered the structure;" and (2) "that defendant did so knowing that he had no right to enter or to be there at that time." He defined "knowing" as meaning "defendant was aware that he was not licensed or privileged to enter the structure, or that the defendant was aware of the high probability that he was not licensed or privileged."
Thereafter, however, the judge not only failed to properly explain how the offered defense plays into the culpability requirement of the criminal trespass statute, he effectively advised the jury to reject the defense entirely. The judge instructed:
If the defendant's belief in the lawfulness of the entry, which he endeavored to effect, is erroneous, and such error is due to ignorance or a mistake as to the law governing such entry, then his entry is not justifiable. The fact that he was honestly mistaken as to what the law says is not a defense. The defendant states that he believed his entry of the premises was part of his responsibilities as a Fugitive Recovery Agent.

*1016 There is no law in this State that permits a private company to authorize its employees to enter a structure without a court order or the permission of the owner or other person authorized to allow such entry. Your task is to apply this law to the defendant's conduct.
As to defendant's so-called reasonable belief, the judge continued:
If you find that there was entry and the entry was unlawful, and that the defendant's belief in the lawfulness of the entry was erroneous, and such entry was due to ignorance or mistake of law, then the defendant's entry was not justified.
This charge left the jury with no choice but to reject defendant's affirmative defense. In essence, the judge advised the jury that a mistake of law is no excuse, and, therefore, a mistake as to the legality of the entry in issue was not a defense to the criminal trespass charge. In that regard, the judge was applying a general rule on mistake of law and ignoring the distinction, alluded to earlier, between ignorance of the legal standard established by the statute defendant is alleged to have violated, which is a defense available only under the limited conditions set forth in subsection (c) of N.J.S.A. 2C:2-4, and a mistake, as claimed here, as to some external body of law, which may destroy the mens rea for the crime charged, and for which the defense remains viable under subsection (a). Thus, in his instruction, the judge never allowed the jury to consider whether defendant's mistake about the collateral or external law governing his authority negatived the particular "knowing" culpability requirement of the criminal trespass statute. Having been told, in effect, there was no such defense in this instance, the jury was left with no real choice in the matter. This instructional error, we conclude, was reversible.
The State nevertheless argues that the defense would have been factually and legally unavailing in any event because even federal common law does not authorize forced entry into a third party's home. We emphasize that the issue here is not the correctness of the legal theory, but the legitimacy of defendant's view of his actions in 2002 as consonant with it. In any event, there was evidence that permitted an inference that defendant believed that the fugitive may have been residing in Jones' home. More significantly, defendant proffered other evidence tending to show the legitimacy of his belief that he was entitled to enter the house, but this offer was rejected by the trial court, thus compounding its instructional error. Defendant's proffer consisted of proof of his reliance on the Rule of Taylor. Specifically, although the court allowed testimony that defendant did, in fact, take a course from the National Institute on Bail Enforcement, it refused to admit evidence that defendant was taught at his bail enforcement course that New Jersey did not pass legislation on the issue and that the Rule of Taylor applied in New Jersey, and his understanding that he was acting in conformity with that law. This proffer of evidence of defendant's education and training related directly to the culpability requirement of the crime charged and, as such, should have been admitted. Whenever the motive or mental state of the accused is material, "a somewhat wider range of evidence is permitted," including all evidentiary circumstances which "tend to shed light" or "tend fairly to explain his actions," even though they may have occurred before the commission of the offense. Biunno, Current N.J. Rules of Evidence, Comment 1 on N.J.R.E. 401(1) (2005) (citing State v. Rogers, 19 N.J. 218, 228, 116 A.2d 37 (1955); State v. Koskovich, 168 N.J. 448, 480-82, 776 A.2d 144 (2001); State v. Crumb, 277 N.J.Super. 311, 317, 649 A.2d 879 (App.Div.1994); *1017 State v. M.L., 253 N.J.Super. 13, 24, 600 A.2d 1211 (App.Div.1991), certif. denied, 127 N.J. 560, 606 A.2d 371 (1992)). Simply put, defendant should have been allowed to show he had received training and education to establish that he did, in fact, hold the belief that his actions were privileged.
To sum, a jury could find from the evidence of record, and the proof wrongfully rejected, that defendant had a reasonable belief, as a matter of fact, that Allen was in residence at Jones' home and, as a matter of law, that he was justified in entering the premises to search for and seize the fugitive. The jury, however, was precluded from doing so. The trial court barred defendant's mistake-of-law defense both in the admission of evidence and instruction to the jury. This compound error warrants reversal of defendant's judgment of conviction.
We have considered defendant's remaining contentions and find them to be without merit, not worthy of discussion in a written opinion. R. 2:11-3(e)(2).
Reversed and remanded for a new trial.
NOTES
[1] Defendant was tried with co-defendant, Clifford Evans, who was acquitted of both charges. Another co-defendant, Stephen Grohman, qualified for pre-trial intervention.
[2] To be sure, we recently made clear in In re Application of Borinsky, 363 N.J.Super. 10, 25, 830 A.2d 507 (App.Div.2003), that the status of a fugitive recovery agent "is not recognized for any purpose by State statute, and it is of no consequence whether federal law confers any rights upon [bounty hunters] to function along those lines." Our decision in Borinsky, however, was subsequent to the incident in question. To date, no State statute governs the fugitive recovery aspect of bail bonds.