**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4729-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT MOSTYN,

    Defendant-Appellant.

_____

Argued August 15, 2017 — Decided October 5, 2017

Before Judges Messano and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0218-16.

Hilary L. Brunell argued the cause for appellant (Mason Thompson, LLC, attorneys; Ms. Brunell, on the briefs).

Michael R. Philips, Assistant Prosecutor, argued the cause for respondent (Gurbir S. Grewal, Bergen County Prosecutor, attorney; Mr. Philips, of counsel and on the brief).

PER CURIAM

Defendant Robert Mostyn appeals from the Family Part's June 28, 2016 judgment of conviction finding him guilty of the disorderly persons offense of contempt of a domestic violence

restraining order, N.J.S.A. 2C:29-9(b)(2), and the petty disorderly persons offense of defiant trespass, N.J.S.A. 2C:18-3(b)(1). The judge imposed a 30-day sentence, and suspended same pending defendant's completion of a one-year period of probation.

## I.

The evidence adduced at defendant's bench trial revealed that on September 15, 2015, the victim, J.A., a college student at a university in Florida, obtained a temporary restraining order (TRO) against defendant, her ex-boyfriend, pursuant to Fla. Stat. Ann. § 784.046 (West 2015). The TRO prohibited defendant from having any contact or communication with J.A., entering or being within 500 feet of J.A.'s residence and her school in Florida, and entering specific locations in New Jersey, including a gym.

On September 21, police served defendant with the TRO at his home. During the ten minutes he spent at defendant's home, Police Officer John Rodriguez provided defendant with a copy of the TRO, watched him read it, and explained defendant could not make contact with J.A. or go to the specific locations. Defendant read the TRO, acknowledged he understood its terms and then signed it.

That evening, defendant met with Anthony Colasanti, a New Jersey attorney and family friend. Colasanti was not a member of the Florida bar, did not practice in Florida and testified he had never seen a Florida restraining order.

Colasanti provided the following instructions to defendant:

> [T]he intent of this order is that you have no contact, not get within 500 feet of [J.A.], and if you're telling me that [she] is in Florida, I see no basis on this order restricting you or limiting you [sic] movement in New Jersey.  But if [J.A.'s] in New Jersey . . . , you can't go within 500 feet of her. You can't go by her house; you can't go by her school; you can't go by wherever is [sic] says you can't go by, so you better make sure that she'd [sic] either in Florida or she's in New Jersey.
>
> . . . .
>
> [Defendant] told me that he had been a member at the [gym] for . . . years and years, and again, I said to him[,] if she's in Florida, you want to go the [gym], make sure she's in Florida.  Do not go there if she's in New Jersey.

Colasanti did not ask defendant how he knew J.A. was in Florida.

The next morning, September 22, defendant testified that he spoke with his cousin who attended the same university as J.A. and shared mutual friends with J.A.  As a result, defendant believed J.A. was in Florida and went to the gym.[1]

That same morning, Detective Brad Smith of the Ramsey Police Department responded to a call that defendant was seen at the gym.

---

[1] Defendant's cousin did not testify at trial.  J.A. did testify and acknowledged she was in Florida on September 22.  She also described in detail defendant's alleged physical assault that led to his arrest in Florida and issuance of the TRO.

Detective Smith reviewed surveillance videos, which verified defendant's presence at the gym in the morning. After other units located defendant driving his car, police conducted a traffic stop and arrested defendant. He waived his Miranda[2] rights and provided a taped statement that was introduced into evidence at trial. We quote briefly from that statement:

> Q: Okay. Are you aware you are not permitted to be [at the gym]?
>
> A: I know, but I mean, I thought she would have to be the one to call up and complain, but she's not there. None of her family members are, I can't believe, like I got arrested.
>
> Q: So you're aware that there is a restraining order barring you from —
>
> A: Temporary restraining order, yeah, but if she's around. Like I asked — I told my mom and everything, she said it's not a good idea but. I'm like, I don't really know, it can't be, she's not home. Like when she's not home, she didn't call it in . . . .

During his trial testimony, defendant admitted going to the gym, but insisted he relied on Colasanti's advice that he was barred from specific locations only if J.A. was in New Jersey.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Defense counsel argued the affirmative defense of ignorance or mistake pursuant N.J.S.A. 2C:2-4. That section of our Criminal Code provides in relevant part:

> a. Ignorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and:
>
> (1) It negatives the culpable mental state required to establish the offense[.]
>
> . . . .
>
> c. A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:
>
> . . . .
>
> (3) The actor otherwise diligently pursues all means available to ascertain the meaning and application of the offense to his conduct and honestly and in good faith concludes his conduct is not an offense in circumstances in which a law-abiding and prudent person would also so conclude.
>
> The defendant must prove a defense arising under subsection c. of this section by clear and convincing evidence.
>
> [Ibid.]

In summation, defense counsel argued the "affirmative defense" under subsection (c) applied because defendant took reasonable steps after being served with the TRO and relied on Colasanti's

advice in good faith. In addition, counsel argued defendant lacked a culpable "mens rea."

The State countered by arguing the restraining order clearly prohibited defendant from going within 500 feet of the gym and was not limited to only when J.A. was in New Jersey. The State contended defendant's claim was limited to subsection (c)(3) of the statute, and defendant did not diligently pursue all available means to ascertain the import of the restraining order, nor did he honestly and in good faith conclude his conduct was permitted.

The judge found the TRO was clear and unambiguous and defendant was aware of its terms. The TRO did not provide that "defendant [was] to refrain from entering [the gym] only when [J.A.] was there." The judge also found that defendant could not have advised Colasanti at the time of the consultation that J.A. was definitively in Florida.

The judge specifically found that defendant's testimony about the September 22 phone call with his cousin in Florida was not credible. The judge noted that the TRO resulted from defendant's failure to stay away from J.A. after a no contact order in Florida went unheeded. The judge further observed that defendant chose to violate the TRO the morning after police served him. The judge commented on defendant's demeanor during J.A.'s testimony and during defendant's testimony. In finding defendant guilty of both

offenses, the judge concluded defendant had failed to demonstrate by clear and convincing evidence "there was reliance on a mistake of law."

Before us, defendant raises the following arguments:

POINT I

THE DEFENDANT FORMED A GOOD FAITH BELIEF, BASED ON ADVICE OF COUNSEL, THAT HE WOULD NOT BE IN VIOLATION OF A FLORIDA RESTRAINING ORDER WHEN HE WENT TO HIS NEW JERSEY GYM. HE THEREFORE DID NOT KNOWINGLY VIOLATE THE ORDER OR COMMIT THE CRIME OF TRESPASS.

A. SCOPE OF REVIEW

B. THE FAMILY COURT ERRED IN APPLYING THE MISTAKE OF LAW DOCTRINE.

1. THE MISTAKE OF LAW DOCTRINE UNDER N.J.S.A. 2C:2-4 WAS APPLICABLE TO THE SPECIFIC INTENT CRIMES OF CONTEMPT AND TRESPASS.

2. A MISTAKE OF LAW WAS FORMED AFTER REASONABLE EFFORTS WERE MADE TO DETERMINE WHETHER THE VISIT TO THE NEW JERSEY GYM WOULD VIOLATE THE TERMS OF THE FLORIDA NO CONTACT ORDER.

3. THE FAMILY COURT'S FINDINGS WITH REGARD TO MATERIAL MISREPRESENTATION WERE LEGALLY AND FACTUALLY INCORRECT.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

"An appellate court must accept a trial court's factual finding if it is supported by sufficient credible evidence in the record." State v. Arthur, 184 N.J. 307, 320 (2005) (citing State v. Locurto, 157 N.J. 463, 472 (1999)). "Unlike an appellate court, a trial judge has the 'opportunity to hear and see the witnesses,' which includes observing gestures and facial expressions." State v. Yough, 208 N.J. 385, 403 (2011) (quoting Locurto, supra, 157 N.J. at 471).

We owe no deference, however, to the "trial court's interpretation of the law . . . and the consequences that flow from established facts[,]" which we review de novo. State v. Hubbard, 222 N.J. 249, 263 (2015). Questions of statutory interpretation present purely legal issues, which we also review de novo. State v. Grate, 220 N.J. 317, 329 (2015).

We explained the distinction between subsection (a) and subsection (c) of N.J.S.A. 2C:2-4 in State v. Wickliff, 378 N.J. Super. 328 (App. Div. 2005). There, the defendant, a bail collection agent, entered certain premises to apprehend a fugitive and was convicted of trespass. Id. at 331. On appeal, the defendant argued the judge improperly denied him the opportunity to present certain evidence about his training and failed to properly instruct the jury on his mistake of law defense, namely,

that he was taught under federal law applicable to New Jersey he had license or privilege as a bounty hunter to enter the residence. Id. at 333-34, 337. We reversed because of the judge's "compound error" in barring certain evidence and wrongly instructing the jury. Id. at 341.

We explained that under N.J.S.A. 2C:2-4(a)(1), a defendant may invoke the mistake of law defense if he "reasonably arrived at the conclusion underlying the mistake" and his mistake "negatives the culpable mental state required to establish the offense." Id. at 334 (quoting N.J.S.A. 2C:2-4(a)(1)). Subsection (a) "does not really create a separate defense; rather it serves to emphasize that a mistake may negate the culpability element required for conviction of an offense." Id. at 334. Subsection (a) "was, in effect, technically unnecessary because it simply confirms that 'no person may be convicted of an offense unless each element . . . is proven beyond a reasonable doubt.'" Ibid. (alteration in original) (quoting State v. Sexton, 160 N.J. 93, 100 (1999)). "The mistakes of law covered by subsection (a) do not involve errors over whether actions are criminal; they are mistakes concerning legal issues that are relevant to proof of the elements of an offense." Id. at 335 (citing Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:2-4 (2005)).

We contrasted this with the affirmative defense contained in the "narrow terms" of subsection (c), whereby conduct is excused by the defendant's "ignorance of the legal standard established by the statute [he] is alleged to have violated." Ibid. The defense offered by subsection (c) is available under "limited conditions," and "[i]n such cases, it is incumbent on the defense to establish its theory of mistake of law by clear and convincing evidence." Id. at 336, 339 (citing N.J.S.A. 2C:2-4(c)).

Clearly, defense counsel's summation focused the judge's attention only upon N.J.S.A. 2C:2-4(c)(3), arguing essentially that defendant's conference with Colasanti evidenced a diligent attempt to "ascertain the meaning and application of the offense to his conduct," i.e., going to the gym, and resulted in defendant's "good faith" conclusion that he would not violate the TRO if he went to the gym. Ibid. Indeed, much of the judge's oral decision focused on defendant's reliance on Colasanti's advice. The judge sought to synthesize federal and New Jersey decisional law which, in our opinion, had little to do with this case.

Nevertheless, it is clear that the judge understood that defendant bore the heavy burden of proving the affirmative defense by clear and convincing evidence. He rejected defendant's claim that he knew J.A. was in Florida based upon a phone conversation

between defendant and his cousin, or that Colasanti was provided with definitive information regarding her whereabouts. The judge noted Colasanti was not familiar with Florida law. We defer to the judge's factual findings which were largely dependent upon his observation of the witnesses and their demeanor during trial. Based on those factual findings, we cannot conclude that he erred in determining that defendant had not established the affirmative defense available under N.J.S.A. 2C:2-4(c)(3) by clear and convincing evidence.

At oral argument before us, defense counsel predominantly focused her attention on subsection (a) and argued the judge failed to address its application to the proofs at trial. We cannot fault the judge in this regard, since the entire argument of defense counsel at trial on this point was little more than a single sentence.[3]

To be guilty of either the fourth-degree crime or the disorderly persons offense of contempt of a domestic violence restraining order, a person must "purposely or knowingly violate[] an order entered under the provisions of the Prevention of Domestic Violence Act of 1991" or the equivalent legislation of another state. N.J.S.A. 2C:29-9(b) (emphasis added). N.J.S.A. 2C:18-3(b)

---

[3] Defendant is represented by different counsel on appeal.

also requires the State prove a defendant acted knowingly in committing a defiant trespass. See id. ("A person . . . knowing that he is not licensed or privileged to do so, . . . enters or remains in any place as to which notice against trespass is given by . . . [a]ctual communication to the actor[.]") (emphasis added). The Criminal Code defines the requisite mental state:

> A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. "Knowing," "with knowledge" or equivalent terms have the same meaning.
>
> [N.J.S.A. 2C:2-2(b).]

Although the judge did not specifically address subsection (a) in his findings, he concluded the State had proven defendant's guilt beyond a reasonable doubt, thereby implicitly rejecting any argument that defendant did not knowingly violate the TRO or enter the gym with knowledge that he was permitted to do so. The evidence supports the judge's factual findings, which in turn support his legal conclusion.

The judge noted several times in his decision that the terms of the TRO were clear and unambiguous on their face. Defendant was fully aware that the TRO prohibited him from going to the gym.

A-4729-15T2

Yet, one day after being served with the TRO, defendant decided to violate its terms. When arrested, defendant acknowledged in his statement that he understood he was not supposed to be at the gym and that his mother told him it was not a good idea. Defendant did not tell police that he based his decision upon Colasanti's advice; instead, he explained that he thought only J.A. could "call up and complain." The judge specifically noted there was no exception in the TRO that permitted defendant to go to the gym or other prohibited places if J.A. were not in New Jersey. Rejecting defendant's testimony, the judge found defendant "had no way to know for sure [if J.A.] was [at the gym]."

In short, the judge's factual findings implicitly reject defendant's mistake or ignorance defense and fully support the judge's conclusion that defendant was guilty beyond a reasonable doubt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4729-15T2