# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3031-22

Y.C.,

    Plaintiff-Respondent,

v.

A.R.,

    Defendant-Appellant.

_____

Submitted May 1, 2024 – Decided December 5, 2024

Before Judges Vernoia and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-1129-23.

Hark & Hark, attorneys for appellant (Michael J. Collis, of counsel and on the brief).

Bastarrika, Soto, Gonzlez & Somohano, LLP, attorneys for respondent (Jane M. Personette, of counsel and on the brief).

The opinion of the court was delivered by

WALCOTT-HENDERSON, J.S.C. (temporarily assigned).

Defendant A.R.[1] appeals from the entry of a final restraining order (FRO) entered under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, in favor of his wife, plaintiff Y.C., on April 27, 2023. Defendant argues the court erred by finding he had committed the predicate acts of harassment and criminal trespass when he entered unannounced the garage of the former marital residence to retrieve personal belongings he claimed plaintiff had agreed he could take. Defendant also argues the court erred by failing to make factual findings regarding his intent to commit said predicate acts. For the reasons that follow, we reverse.

I.

Plaintiff and defendant were married but living apart at the time of the incident giving rise to plaintiff's domestic-violence complaint. The parties share a minor child who was born during the marriage. On November 17, 2022, after the parties had been separated for several months, defendant went to plaintiff's residence unannounced, broke the lock on the garage door, and entered the garage to retrieve some of his personal belongings. Plaintiff was not at home at the time.

---

[1] We use initials to identify the parties pursuant to Rule 1:38-3(d)(10).

A-3031-22

When plaintiff learned that the lock on the garage had been broken, she contacted the police. Plaintiff also sought and obtained a temporary restraining order (TRO) against defendant based on the predicate act of harassment, N.J.S.A. 2C:25-19(a)(13) and N.J.S.A. 2C:33-4. The parties' minor child is also listed as a protected party under the TRO, which restricts defendant from having any contact or communication with plaintiff and the child.

On April 27, 2023, the parties appeared for the FRO hearing in the Family Part. Neither party was represented by counsel. Plaintiff testified that she and defendant married in 2015 and had lived together from 2015 until defendant moved out in January 2022. The parties' sole child, a daughter born in 2018, resides exclusively with plaintiff. Plaintiff also testified that she had filed for divorce prior to the FRO hearing.

According to plaintiff, defendant "went away on vacation for a month," received a loan from the government, and "decided to abandon [her] with [their] daughter and remain outside the country." She testified that since leaving the marital home, defendant initially had provided only minimal financial support for her and the child, "[b]ut then afterwards it stopped and then he wanted me to move in with his mother." Plaintiff further testified that when she asked if

defendant could pay child support, he responded, "he'd rather hang himself and then [plaintiff] would see who would pay child support."

As to the incident giving rise to the FRO hearing, plaintiff testified that while she was at work on November 17, 2022, defendant and his brother went unannounced to the former marital home where she resided with the minor child and broke the lock on the garage door to gain entry to the garage so he could retrieve his belongings. Defendant had left several personal items in the garage, including a motorcycle, when he left the home to go on an extended vacation. Defendant took some, but not all, of his personal belongings after gaining access to the garage.

Plaintiff testified that she became aware of the broken garage door lock when another family member went to the home, observed the broken lock and called her. At that time, plaintiff was at work approximately twenty minutes away. Plaintiff contacted the police who arrived at the home while defendant was still on the property.

Plaintiff further testified that

> [s]ince we used to live together at the house he decided to leave, I decided to continue paying rent. He had his vehicle parked out in the parking lot and he had his motorcycle stored in the garage. And he decided to abandon all that as well while he was out there partying while I'm here getting up at five a.m. to go out to work,

4

> take our daughter out of the house at that time in the morning, drop her off at my mother's so that she could send her off to school. And he does not want to pay the garage any longer which he was seven months behind. So he and his brother had decided to come over and . . . break the locks of the garage.

Plaintiff acknowledged that prior to November 17, 2022, defendant told her that he wanted to retrieve his things from the garage and she had agreed because she did not want any of defendant's belongings.

When the court asked whether there were any other acts of domestic violence, plaintiff testified that prior to the November 17, 2022 incident, defendant had kicked her in the leg as she was walking away from him, causing bruising. The court admitted in evidence a photograph offered by plaintiff showing her bruised leg. Plaintiff testified that incident was the first time defendant had "hurt [her] physically," although "prior to that [there were] many conflicts between" them.

Plaintiff further testified that in an effort to hurt her defendant told her "he didn't love [her] anymore" and "ha[d] new relationships while married [to her]." She further testified that "[i]n six years [she] was never able to have a conversation with him like a normal person . . . " and "every time . . . he speaks about [her], he refers to [her] as a crazy woman and he trie[s] to lower [her] self-esteem." She also recalled another incident where defendant broke her car

5

window in 2021, although she could not recall the exact circumstances that led to that incident.

When questioned by the court about what she sought in the hearing, plaintiff responded, "that he not come close to me anymore since he and I have always had a bad relationship," and "[h]e doesn't understand a, 'no.' If I ask him, '[p]lease don't do that,' he won't accept it." And, in response to the court's question about whether defendant's actions put her at risk, plaintiff stated "I think so." Plaintiff then stated, "he does whatever his head tells him to do." Plaintiff testified she was fearful "because of the behaviors that he's shown prior, as well."

When asked by the court why their minor child is a "protected party" under the TRO, plaintiff testified that she "never felt that [defendant] has protected his daughter . . . He has seen the child be sick, very sick, to go to the hospital, and he doesn't even worr[y] about it or care[] about it," and defendant does not cope with the child when she behaves like a child, "[h]e yells at her. He has hit her." She testified that she has photographs of bruises or marks on their daughter, although she did not offer any photographs of the child's injuries in evidence. Plaintiff also admitted that she did not report any of these incidents involving defendant and the minor child to the New Jersey Division of Child Protection and Permanency.

6

Following plaintiff's testimony, the court stated that it wanted "to hear from" defendant, noting defendant had "choices; say nothing, ask questions, or testify." Defendant testified and denied breaking the lock on the garage door. He testified that he had used a key which he had left in the toolbox located inside the garage and that he had shown the key to police officers. He also testified, "[s]he told my friend to tell me to go and pick up the things . . . . And since she told me to go, I went. And then five minutes after I arrived, the police came."

Defendant explained that he brought plaintiff to the United States "as a girlfriend" and "she has an appointment for her green card, residency card." He testified that plaintiff "is seeking this [r]estraining [o]rder in order for her to get her papers." Defendant further testified that in the past, plaintiff had threatened him and said that she would kill him. He denied plaintiff's allegations that he did not financially support her and the minor child and testified that plaintiff had returned money he sent her.

In rebuttal, plaintiff testified "[a]bout sending the money, that's also a lie. He stopped sending the money for two months. He was sending $700 where we owed $2,800." And, when asked by the court if she had returned money to defendant, plaintiff responded in the affirmative, stating, "yes, [b]ecause . . . I

believe he was doing it in a way to mock me so that I would look anguished, but I was able to pay my bills, pay the rent and support our child."

Prior to making a decision, the court asked defendant, "[i]s there anything else before I make my decision?" Defendant testified that plaintiff had told him "that when she was not home, . . . somewhere around ten or eleven, that I [should] go and pick up the things. And I did have the key, and the key is currently inside the garage in a toolbox . . . ."

The court issued an oral decision, finding plaintiff credible and her testimony "very believable." The court found defendant's claim that he had a key to the garage which he left in the garage "make[s] no sense. Why would you lock the only way into the garage inside the garage?" The court concluded

> plaintiff wanted him to come and get his stuff [but] made it plain to him that he was not welcomed at her home. And notwithstanding his clear knowledge of that, he showed up unannounced, not specifically invited at that time, and he takes what he wants and leaves when he does.

The court found credible plaintiff's testimony defendant had previously kicked her, and stated the injury to her leg "was a significant bruise," "must have caused significant pain . . . [and] must have been applied with significant force." The court characterized defendant's actions on November 17, 2022, as "a light predicate act, an act of criminal trespass, an act of harassment," concluding that

8

defendant showed up without notice, knowing that it would cause plaintiff alarm. The court reasoned that "[i]t clearly caused her alarm because she called the police as a result of her alarm [which] has proved to the [c]ourt that she never gave her consent, never gave [defendant] permission to be at the property at that time."

The court concluded the parties had a "long history of name calling and mutual argumentation" and plaintiff had reason to get upset, disappointed, distressed and although those didn't rise to the level of domestic violence, "acts of criminal trespass and harassment" along with the "injury to [her] leg as a result of intentional kicking and prior harassing language supports the entry of a [r]estraining [o]rder in favor of the plaintiff." The court entered the FRO against defendant, continued custody of the child with plaintiff, and prohibited defendant's parenting time "until a [c]ourt [o]rder is entered allowing it."

Defendant appeals, arguing the following points for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN FINDING PREDICATE ACTS OF HARASSMENT AND CRIMINAL TRESPASS.
>
> POINT II

THE TRIAL COURT ERRONEOUSLY CONCLUDED THE RESTRAINING ORDER WAS NECESSARY FOR PROTECTION OF PLAINTIFF.

II.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (internal quotation marks omitted). The "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence," but a reviewing court does "not pay special deference to [the trial court's] interpretation of the law." Thieme, 227 N.J. at 283 (quoting Cesare, 154 N.J. at 411-12 (1998) (citing Rova Farms Resort Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)) (first); D.W. v. R.W., 212 N.J. 232, 245 (2012)) (second).

The entry of a final restraining order requires the trial judge to conduct a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).

10

First, the court must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred. Ibid.; see N.J.S.A. 2C:25-29(a) (stating that "the standard for proving the allegations in the complaint shall be by a preponderance of the evidence"). In performing that function, "the Act does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

Second, upon a finding of the commission of a predicate act of domestic violence, the court must decide whether a restraining order is necessary to provide protection for the victim from an immediate danger or to prevent further abuse. Silver, 387 N.J. Super. at 126-27. The inquiry is necessarily fact specific, id. at 127-28, requiring consideration of the following factors under N.J.S.A. 3C:25-29(a):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;

A-3031-22

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a)(1)-(6).]

Deference is especially appropriate in a case, such as this one, in which the evidence is largely testimonial and involves questions of credibility because the trial court's ability to see and hear the witnesses provides it a better perspective than a reviewing court to judge their veracity. Thus, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 413. Here, however, we find no such support for the trial court's findings. Applying the aforementioned legal standards, we determine the court erred in finding the predicate acts of harassment and criminal trespass and by failing to make findings under the second prong of Silver to warrant granting the FRO. 387 N.J. Super. at 126-27; Thieme, 227 N.J. at 283.

As a preliminary matter, we note that the court failed to analyze and make factual findings as to whether plaintiff's evidence established each of the requisite statutory elements for the predicate offenses of harassment and criminal trespass. N.J.S.A. 2C:33-4; N.J.S.A. 2C:18-3. We review the trial court's

12

determinations as to these predicate offenses de novo. C.C v. J.A.H., 463 N.J. Super. 419, 428-29 (App. Div. 2020); Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). Here, the court failed to correctly analyze the elements of each of the pertinent statutes. We, however, separately examined the record to determine whether there was sufficient evidence supporting the court's conclusion that defendant committed harassment and criminal trespass.

The court found plaintiff had proven the predicate acts of harassment and criminal trespass based on her testimony that defendant showed up unannounced, not specifically invited at that time, allegedly broke the garage-door lock, and took what he wanted from the garage. The court reasoned that by showing up unannounced, defendant knew his actions would cause plaintiff to be alarmed. The court further reasoned that plaintiff must have been alarmed because she contacted the police.

We first examine the court's finding of the predicate act of harassment. Under N.J.S.A. 2C:33-4(a) to (c), a person commits harassment if, "with purpose to harass another," he or she:

> (a) [m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

(b) [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; [or]

(c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

The court did not identify the subsection of the statute under which it made its finding of the predicate act of harassment, however, from this record, we infer that the court based its finding on subsection (c) of the statute, rather than subsections (a) and (b), which respectively address communications and physical touching or threats, neither of which are at issue here. We make this inference because plaintiff did not testify that on November 17, 2022, defendant had engaged in any offensive or course language or subjected her to any physical assault supporting a claim he violated subsections (a) and (b) of the statute.

To establish a violation of subsection (c) of N.J.S.A. 2C:33-4, a plaintiff must prove the defendant engaged in a course of conduct that is alarming if done with the purpose "to alarm or to seriously annoy" the intended victim. State v. Hoffman, 149 N.J. 564, 581 (1997). The "finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div.

14

1989)).  When determining whether the harassment statute has been violated, "courts must consider the totality of the circumstances," H.E.S. v. J.C.S., 175 N.J. 309, 326 (2003); Cesare, supra, 154 N.J. at 404, in light of the parties' history, Silver, supra, 387 N.J. Super. at 125.

We accept the factual and credibility findings of the Family Part judge, which are entitled to deference.  Balducci v. Cige, 240 N.J. 574, 595 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019).  In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions."  Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015).  "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 411-12).

However, we review de novo the court's legal conclusions, Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012), that defendant committed the predicate act of harassment by showing up unannounced, "knowing there had been no arrangement, showing up knowing that it would cause her alarm."  Under the harassment statute, the court was required to determine whether defendant

entered the garage with the intention to harass plaintiff, but never made such a finding. N.J.S.A. 2C:33-4.

Here, the court instead based its finding of harassment solely on its determination defendant's unannounced visit and entry into the garage caused plaintiff alarm. It is undisputed that plaintiff and defendant had previously discussed defendant's intent to retrieve his personal items from the garage and that plaintiff had agreed that he could retrieve these items. In fact, plaintiff testified that she wanted defendant to pick up his belongings and pay the arrears owed. Both parties therefore understood that defendant would be retrieving his belongings from the garage.

Plaintiff provided no proof defendant came to the home and entered the garage with an intent to harass her. J.D., 207 N.J. at 487; Fuchs, 230 N.J. Super. at 428; Silver, 387 N.J. Super. at 127; Hoffman, 149 N.J. at 576-77 (1977). Our Court has construed the language of the harassment statute "as encompassing, 'for constitutional reasons, only those modes of communicative harassment that 'are also invasive of the recipient's privacy,'" Cesare, 154 N.J. at 404 (quoting Hoffman, 149 N.J. at 583), and that "constitute threats to safety," State v. Burkert, 231 N.J. 257, 278 (2017). Here, we perceive plaintiff did not offer sufficient evidence or meet her burden of showing harassment based on defendant's

16

unannounced visit to the garage area only. The act of showing up and entering the garage as the parties had previously discussed when plaintiff was at work is not harassment. Defendant's presence at plaintiff's residence when she was not present there does not constitute a threat to her safety. Under these circumstances, we conclude plaintiff did not meet her burden of proof by a preponderance of the evidence that defendant committed the predicate act of harassment. See Silver, 387 N.J. Super. at 125.

We similarly reject the court's finding that defendant had committed the predicate act of criminal trespass under N.J.S.A. 2C:18-3.[2] Criminal trespass is defined as:

> Unlicensed entry of structures. A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any research facility, structure, or separately secured or occupied portion thereof, or in or upon utility company property.

---

[2] Criminal trespass was not alleged in the original complaint, but defendant did not object to the introduction of evidence related to the offense and does not argue on appeal the court erred by finding criminal trespass despite it not being alleged as a predicate act in the complaint. Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned). During a trial on a complaint seeking an FRO under the PDVA, the court may allow an amendment of the complaint to expand its allegations, but only where a defendant's due process rights are not violated. H.E.S. v. J.C.S., 175 N.J. 309, 324 (2003). Defendant does not make a due process claim on appeal.

[N.J.S.A. 2C:18-3(a).]

We reject the court's finding of the predicate act of criminal trespass for several reasons. A person commits an offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any . . . structure." N.J.S.A. 2C:18-3(a). As previously stated, plaintiff had consented to defendant's request to retrieve his belongings from the garage. Defendant testified plaintiff had also told him that he could go to the home "somewhere around ten or eleven."

Plaintiff did not testify that defendant entered the garage knowing that he was not licensed or privileged to do so. In fact, plaintiff testified defendant was paying rent for the garage, although he was in arrears, and she had told defendant he could go to the garage and had told his friend that he needs to "take out everything that belonged to him but that he pay the $700 that he owed in the rent." Even if defendant was in arrears on his garage rental payments, it is undisputed he had a license to use that space because it was clearly an area that he had rented and that he not yet been requested or required to vacate. See Xerox Corp. v. Listmark Computer Sys., 142 N.J. Super. 232, 241 (App. Div. 1976) (holding a tenant was not a trespasser where the tenant continued using the premises after the expiration of the lease and being told to vacate); State v.

18

<u>Haines</u>, 44 N.J.L. 134, 136 (1882) (holding that even the institution of a suit to evict does not make a tenant a trespasser).

As previously stated, a person commits an offense of criminal trespass if, knowing that he is not licensed or privileged to do so, enters or surreptitiously remains in any structure. <u>State v. Wickliff</u>, 378 N.J. Super. 328, 336 (App. Div. 2005) ("The culpable mental state of [criminal trespass] is knowledge that entry is unauthorized"); <u>see also</u> <u>State v. Braxton</u>, 330 N.J. Super. 561, 566 (App. Div. 2000). Plaintiff did not establish that defendant entered the garage knowing that he was not licensed or privileged to do so, even if he broke the lock as she alleged. Plaintiff's own testimony is that defendant had leased the space and had been paying for it until he fell into arrears and that she had agreed that he could stop by the garage to remove his belongings. Against this backdrop, plaintiff failed to carry her burden of showing defendant's actions constitute criminal trespass and the court erred in finding this predicate act.

Because we are persuaded the court erred in finding plaintiff had met her burden of establishing the predicate acts of harassment and criminal trespass under <u>Silver</u>'s first prong, we need not reach the second inquiry: whether a domestic violence restraining order should be issued under the PDVA. <u>Silver</u>,

387 N.J. Super. at 127 ("This second inquiry, therefore, begins after the plaintiff has established . . . one of the enumerated predicate acts . . . .").

Plaintiff's failure to sustain her burden of proving by a preponderance of the evidence that defendant committed the predicate acts of harassment and criminal trespass alleged in her complaint requires reversal of the FRO issued by the court.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3031-22